# UNITED STATES DISTRICT COURT
for the
Southern District of California

| In the Matter of the Search of | ) |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| | ) |
| Various cellular telephones, satellite telephones, and GPS devices seized on September 30, 2019 | ) ) ) |

Case No.  **19MJ4844**

*[FILED stamp: OCT 31 2019 — CLERK US DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA BY DEPUTY]*

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated herein.

located in the ___**Southern**___ District of ___**California**___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 46 U.S.C. §§ 70503(a)(1), 70506(b) | Conspiracy to Possess with Intent to Distribute Cocaine On Board a Vessel Subject to the Jurisdiction of the United States |
| Title 21 U.S.C. §§ 959, 963 | International Conspiracy to Distribute Controlled Substances |

The application is based on these facts:
See attached affidavit of Homeland Security Investigation TFO Andres Briseno

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Andres Briseno, HSI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  **10/30/19**

_____
*Judge's signature*

**BARBARA L. MAJOR**
**U.S. MAGISTRATE JUDGE**

City and state:  San Diego, California     Hon. Karen S. Crawford, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 46 U.S.C. §§ 70503(a)(l), 70506(b), Conspiracy to Possess with Intent to Distribute Cocaine On Board a Vessel Subject to the Jurisdiction of the United States, and Title 21 U.S.C. §§ 959, 963, Conspiracy to Distribute Controlled Substances for the Purpose of Importation into the United States is described below:

> One (1) Garmin 72H GPS, bearing number 1T73003263 ("**Target Device 1**") as described in Attachment A and incorporated herein,
>
> One (1) Garmin 72H GPS, bearing number 1T7319613 ("**Target Device 2**") as described in Attachment A and incorporated herein,
>
> One (1) Iridium IRID0115U Satellite Phone, bearing IMEI number 300115060838860 and SIM number 8988/69326002527285 ("**Target Device 3**") as described in Attachment A and incorporated herein,
>
> One (1) Nokia Cellphone, bearing IMEI 352664082452589, IMEI 352664082452597, and SIM 1019 1194 1905 ("**Target Device 4**") as described in Attachment A and incorporated herein,
>
> One (1) Claro 4g Lite-white and red, Sim Card 89593 01000 79945 811 ("**Target Device 5**") as described in Attachment A and incorporated herein,
>
> One (1) White CNT Sim Card 89593 02110 13127 1315F ("**Target Device 6**") as described in Attachment A and incorporated herein,
>
> One (1) White Sim Card 89593 02705 18753 3086 F ("**Target Device 7**") as described in Attachment A and incorporated herein,
>
> One (1) Black 8 GB, Micro SD Card 01086015041001 ("**Target Device 8**") as described in Attachment A and incorporated herein,

(collectively referred to as "**Target Devices**"). Target Devices are currently in the possession of United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the **Target Devices** described in Attachment A includes the search of disks, memory cards, sim cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices**. The seizure and search of **Target Devices** will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Devices** will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of July 1, 2019, to October 16, 2019:

a. tending to identify attempts to transport cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

d. tending to identify travel to or presence at locations involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States, such as pickup, transfer, and delivery locations, along with the refueling points throughout the smuggling venture;

e. tending to identify the user of, or persons with control over or access to, the target device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 46 U.S.C. §§ 70503(a)(1), 70506(b) and Title 21 U.S.C. §§ 959, 963**.

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Andres Briseno, Task Force Officer (TFO), Homeland Security Investigations (HSI), after being duly sworn, state:

**INTRODUCTION**

1.      This affidavit supports an application to search the following target devices:

One (1) Garmin 72H GPS, bearing number 1T73003263 ("**Target Device 1**") as described in Attachment A and incorporated herein,

One (1) Garmin 72H GPS, bearing number 1T7319613 ("**Target Device 2**") as described in Attachment A and incorporated herein,

One (1) Iridium IRID0115U Satellite Phone, bearing IMEI number 300115060838860 and SIM number 89881693260025 27285 ("**Target Device 3**") as described in Attachment A and incorporated herein,

One (1) Nokia Cellphone, bearing IMEI 352664082452589, IMEI 352664082452597, and SIM 1019 1194 1905 ("**Target Device 4**") as described in Attachment A and incorporated herein,

One (1) Claro 4g LTE-white and red, bearing number Sim Card 89593 01000 79945 811 ("**Target Device 5**") as described in Attachment A and incorporated herein,

One (1) White CNT Sim Card, bearing number 89593 02110 13127 1315F ("**Target Device 6**") as described in Attachment A and incorporated herein,

One (1) White Sim Card, bearing number 89593 02705 18753 3086 F ("**Target Device 7**") as described in Attachment A and incorporated herein,

One (1) Black 8 GB, Micro SD Card, bearing number 01086015041001 ("**Target Device 8**") as described in Attachment A and incorporated herein,

(collectively referred to as **"Target Devices"**) and to seize evidence of crimes as outlined in Attachment B, and incorporated herein, specifically Title 46 U.S.C. §§ 70503(a)(1),

1

70506(b)[1], Conspiracy to Possess with Intent to Distribute Cocaine On Board a Vessel Subject to the Jurisdiction of the United States, and Title 21 U.S.C. §§ 959, 963, Conspiracy to Distribute Controlled Substances for the Purpose of Importation into the United States.

2.      On September 30, 2019, the U.S. Coast Guard Cutter (USCGC) Alert was conducting routine patrol approximately 705 nautical miles south of Puerto Vallarta, Mexico when a go-fast vessel (GFV) was detected. The USCGC Alert diverted to intercept and dispatched two Over the Horizon (OTH) vessels to intercept the GFV. The two OTH vessels arrived on the scene boarded the GFV, and arrested three Ecuadorian crewmen, Victor Antonio CARABALI-Gracia, Carlos Rodolfo MERO-Bailon, and Marino Antonio LOPEZ-Pena. The USCG crewman on the OTH's subsequently recovered multiple bales of cocaine with an approximate at-sea weight of 916 kilograms (2,147 pounds). The **Target Devices** were seized from the go-fast vessel and/or the Defendants.

3.      Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachment B.

## EXPERIENCE AND TRAINING

4.      I am a Border Patrol Agent with the Department of Homeland Security, Customs and Border protection, Office of the Border Patrol (OBP). I have been employed as a Border Patrol Agent since January of 2003, I was trained at the Border Patrol Academy in Glynco, Georgia. The combined Academy curriculums cover specialized training in the Immigration and Naturalization Act, criminal investigations, criminal law, and statutory authority, as well as cross-training in Title 21 United States Code, controlled substances violations, and in Title 19 United States Code, customs law violations. My training includes

---

[1] Title 46 U.S.C. §§ 70503(a)(1) and 70506(b) prohibits the manufacture, distribution, and possession of controlled substances, and conspiracy to commit the same, on vessels subject to jurisdiction of the United States. A vessel is "subject to the jurisdiction of the United States" if the vessel is without nationality. A vessel without nationality includes any vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

investigating various violations of federal law and state law, including narcotics smuggling, alien smuggling, weapons smuggling, and bulk currency smuggling. I have worked on narcotics smuggling and alien smuggling cases, as well as maritime smuggling cases, I speak and understand Spanish fluently. My past offices/assignments with OBP include: the Imperial Beach Border Patrol Station's (IMB) Coastal Border Enforcement Team (CBET), the San Diego Sector's Smuggling Interdiction Group and the IMB Station Abatement Strike Team. As part of CBET, SIG and Strike Team, I was assigned to various groups and joint agency operations that investigated human smuggling organizations and or DTO's who smuggled people or drugs from Mexico to the Southern, Central, and Eastern Districts of California. I have worked with other agents and officers with extensive experience in these investigations as well.

5.    I am currently assigned to the Organized Crime Drug Enforcement Task Force (OCDETF) Strike Force as a Task Force Officer (TFO) with the Department of Homeland Security Investigations (HSI) and Joint Task Force West (JTFW). Strike Force is primarily tasked with investigating, arresting, and prosecuting narcotics smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor as well as other offenses that occur at the Ports of Entry in San Diego County including assaults on federal officers, escapes from federal custody, and a variety of other federal offenses. Strike Force agents deploy in plainclothes attire and drive department unmarked vehicles. My Current duties entail investigating the illicit trafficking of controlled substances from Mexico to the U.S. by major Mexican cartels operating throughout Mexico, as well as major Drug Trafficking Organizations (DTO's) operating throughout Central America, Columbia, and Ecuador. I am cross designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substance Act, pursuant to Title 21, United States Code.

6.    During the course of my employment with the United States Border Patrol, I have participated in investigations, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants and the indictments of persons for a variety of federal

offenses. I have also participated in narcotics smuggling, alien smuggling, and bulk cash smuggling investigations, which resulted in both federal and state criminal charges. Through my training and experience, I have gained a working knowledge and insight into the typical workings of narcotics smuggling organizations. I have also gained extensive information as to the normal operational habits of persons who make their living as narcotics smugglers. I am aware that it is a common practice for narcotics smugglers to use cellular telephones, pagers and portable radios to maintain communications with co-conspirators and coordinate smuggling arrangements to further their criminal activities.

7.    Based on my training and experience, I have become familiar with the methods utilized in narcotics trafficking operations and the unique trafficking patterns employed by narcotics organizations. I have also spoken with senior agents as well as other senior law enforcement officers, about their experiences and the results of their investigations and interviews. I know that drug traffickers often require the use of a communication facility to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances and for arranging dispositions of proceeds from the sales of controlled substances. I know that professional drug operations depend upon maintaining their extensive contacts. The communication facility enables drug dealers to maintain contact with drug associates, drug suppliers and drug customers. I also know that drug traffickers sometimes use fraudulent information, such as nominee names and false addresses, to subscribe to communication facilities, especially emails, cellular phones, messaging apps and frequently use communication facilities to thwart law enforcement efforts to intercept their communications.

8.    Based upon my training and experience as a TFO, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a.    Drug traffickers will use c cellular/satellite telephones and GPS devices because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

4

b.    Drug traffickers will use cellular/satellite telephones and GPS devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c.    Drug traffickers and their accomplices will use cellular/satellite telephones and GPS devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d.    Drug traffickers will use cellular/satellite telephones and GPS devices to direct boat captains/crew members to synchronize an exact drop off and/or pick up time of their illegal cargo;

e.    Drug traffickers will use cellular/satellite telephones and GPS devices to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

f.    The use of cellular/satellite telephones by drug traffickers tends to generate evidence that is stored on by the service provider, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, routes, location history, and other digital information.

g.    The use of GPS devices by smugglers tends to generate evidence that is stored on the GPS, including, but not limited to address book entries, search history, user profiles and passwords, location history, route contacts, saved addresses-tending to indicate who used or controlled the GPS device, and other digital information.

9.    Based upon my training and experience as a TFO, and consultations with law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/satellite telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third party applications, photographs , audio files, videos, and location data.  I also know that GPS devices can and often do contain electronic records and data such as contacts location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/satellite telephone and GPS device.  Specifically, I know based upon my training, education, and

5

1 experience investigating these conspiracies that searches of cellular/satellite telephones
2 and GPS devices yields evidence:

   a.   tending to identify attempts to transport cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

   b.   tending to identify accounts, facilities, storage devices, and/or services-such as email addresses, IP addresses, and phone numbers- used to facilitate the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

   c.   tending to identify co-conspirators, criminal associates, or others involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

   d.   tending to identify travel to or presence at locations involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States, such as pickup, transfer, and delivery locations, along with the refueling points throughout the smuggling venture;

   e.   tending to identify the user of, or persons with control over or access to, the target device; and/or

   f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

19        10.    In preparing this affidavit, I have conferred with other agents and law
20 enforcement personnel who are experienced in the area of drug trafficking investigations,
21 and the opinions stated here are shared by them. Further, I have personal knowledge of the
22 following facts, or have them related to me by persons mentioned in this affidavit. This
23 statement is made in support of an application for a warrant to search **Target Devices** that
24 are believed to contain evidence of violations of Title 46 U.S.C. §§ 70503(a)(l), 70506(b)
25 and Title 21 U.S.C. §§ 959, 963.

26        11.    Because this affidavit is being submitted for the limited purpose of
27 establishing probable cause to obtain a search warrant, it does not contain all of the
28 information known to federal agents regarding this investigation. Instead, it contains only

1  those facts believed to be necessary to establish probable cause.  In addition, information
2  contained in this affidavit is based upon reviews of official reports and records, upon
3  conversations with other Homeland Security Investigations Special Agents, and my
4  personal observations and knowledge.  When the contents of documents or statements of
5  others are reported herein, they are reported in substance and in part unless otherwise
6  indicated.

### FACTS SUPPORTING PROBABLE CAUSE

7  12.    On September 30, 2019, the U.S. Coast Guard Cutter (USCGC) Alert was
8  conducting routine patrol approximately 705 nautical miles south of Puerto Vallarta,
9  Mexico when a go-fast vessel (GFV) was detected that appeared to be dead-in-the-water
10  (DIW).  The USCGC Alert diverted to intercept and dispatched two Over the Horizon
11  (OTH) vessels to intercept the GFV.

12  13.    The OTHs traveled approximately 12 miles before they encountered the
13  GFV.  Once on scene, one of the OTHs made contact with the GFV and identified
14  themselves as the USCG.  The GFV was approximately thirty-feet in length, panga-style
15  vessel, with a blue hull and three outboard engines.  The GFV originally had two visible
16  persons on board, and a third appeared following the OTH identifying themselves as
17  USCG.  The three outboard engines were all lifted out of the water, and the OTH crew
18  observed a number of knives on the deck, fresh light blue paint in the interior part of the
19  vessel, and excessive rub marks on the left and right side of the vessel.

20  14.    The boarding team (BT) from one OTH made direct contact with the crew of
21  the GFV, ensuring that they were in good health.  The crew responded that they had little
22  to no food and were running low on supplies, but no other health issues were
23  mentioned.  The BT observed additional "rub marks" on both the right and left back portion
24  of the vessel, as well as multiple fuel drums and a make-shift antenna next to the helm.

25  15.    The crew claimed to be from Ecuador and stated they departed Santa Rosa,
26  Ecuador on September 16, 2019.  The crew claimed that they had been out fishing and
27  were very low on food, out of fuel, and had been disabled and were adrift for approximately

7

1   three days.  The BT only observed a couple fishing hooks that all appeared to be rusty, and

2   a net that was stored in the forward compartment.

3   16.   The BT gathered the crew and their belongings, transferred them to the

4   waiting OTH, and ultimately back to the USCGC Alert.

5   17.   After the removal of the crew of the GFV, the BT then conducted an

6   IONSCAN and received positive results for cocaine.  The BT also observed a large beacon

7   (GPS buoy) in plain view in the largest compartments.  Members of the BT noticed that

8   the deck felt "springy," and sagged slightly at the centerline.  The aft compartment held

9   several empty fuel cans and a make shift helm.

10   18.   The BT also noticed the main compartment appeared as though it had been

11   repaired around each of the hull's frames that ran from port to starboard.  A member of the

12   BT noticed what appeared to be new fiberglass work along the frames where they came

13   out of the deck.  Each side of this area of the vessel had a different shade of blue paint

14   unlike the rest of the interior of the GFV.  This led the BT to believe that the GFV may

15   have contained a false deck.

16   19.   The BT drilled a small hole in the deck, and the drill bit came out coated with

17   a white powdery substance.  The BT conducted a field-test on the white powdery substance

18   and received positive results for cocaine.

19   20.   Following the positive field-test, a more destructive search was begun.  The

20   BT began removing sections of the deck with power tools, revealing brown individually

21   wrapped packages.  The packages were removed from the deck of the GFV and placed into

22   bags, and ultimately transferred to the USCGC Alert.

23   21.   The BT recovered seventy-four bales containing individual packages,

24   resulting in an at-sea total weight of approximately 916 kilograms (2,147 pounds).

25   22.   On board the USCGC Alert, the detainees and non-drug evidence, consisting

26   of two Garmin GPS units, a satellite phone, the GPS buoy, one cell phone, a code sheet,

27   and several phone sim cards, were all processed and photographed.  The crew were then

28

8

1    identified as Victor Antonio CARABALI-Gracia, Carlos Rodolfo MERO-Bailon, and

2    Marino Antonio LOPEZ-Pena.

3         23.    The USCG Alert requested and was granted permission to sink the GFV as a

4    hazard to navigation.

5         24.    The USCGC personnel ultimately transported the three subjects, the bulk

6    cocaine, a representative sample of the cocaine which had been separated from the bulk

7    seizure by USCG crewmembers while onboard the USCGC Alert, and the additional seized

8    evidence to San Diego, CA, on October 16, 2019. The cutter was met at 8:00 a.m. by HSI

9    agents who took custody of the subjects, the bulk cocaine, the representative sample of

10   cocaine, and the non-drug evidence.

11        25.    Upon taking custody of the three subjects, HSI agents separated miscellaneous

12   personal property from the clothing of all three subjects. The clothing for all three subjects

13   were laid out, searched, and photographed. The clothing was ultimately deemed hazardous

14   due to contamination by a mixture of fuel and sea-water. The clothing was then discarded

15   as material deemed a hazard cannot be retained. All three subjects consented to HSI agents

16   discarding the hazardous clothing and were given the opportunity to tell agents what

17   belongings they wanted retained as personal effects. All three subjects were provided pizza

18   and other food and drink by the agents.

19        26.    Based on my experience investigating drug traffickers using go fast vessel and

20   the particular investigation in this case, I believe that Victor Antonio CARABALI-Gracia,

21   Carlos Rodolfo MERO-Bailon, and Marino Antonio LOPEZ-Pena likely used the Target

22   Devices to coordinate the conspiracy to possess with intent to distribute controlled

23   substances for the purpose of importation and distribution conspiracies, telephone contact

24   with smugglers can begin several weeks or months before drugs are loaded into the go-fast

25   vessel, and includes coordination on the pickup, transfer and delivery locations, along with

26   the refueling points throughout the smuggling venture. I respectfully request permission to

27   search Target Devices for data beginning on July 1, 2019, up to October 16, 2019.

28

9

27.    Based on my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of Victor Antonio CARABALI-Gracia, Carlos Rodolfo MERO-Bailon, and Marino Antonio LOPEZ-Pena, such as search history, user profiles and passwords, location history, routes, contacts, saved addresses-tending to indicate who used or controlled the cellular/satellite telephone and/or GPS device, and other digital information are stored in the memory of **Target Devices**.

## METHODOLOGY

28.    It is not possible to determine, merely by knowing the cellular/satellite telephone or GPS device's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device

1   manually and record the process and the results using digital photography.  This process is

2   time and labor intensive and may take weeks or longer.

3          29.    Following the issuance of this warrant, I will collect the **Target Devices** and

4   subject them to analysis.  All forensic analysis of the data contained within the telephone,

5   its memory cards, and other electronic devices will employ search protocols directed

6   exclusively to the identification and extraction of data within the scope of this warrant.

7          30.    Based on the foregoing, identifying and extracting data subject to seizure

8   pursuant to this warrant may require a range of data analysis techniques, including manual

9   review, and, consequently, may take weeks or months.  The personnel conducting the

10  identification and extraction of data will complete the analysis within thirty (30) days,

11  absent further application to this court.

## CONCLUSION

13         31.    Based on all of the facts and circumstances described above, I believe that

14  probable cause exists to conclude that Victor Antonio CARABALI-Gracia, Carlos Rodolfo

15  MERO-Bailon, and Marino Antonio LOPEZ-Pena used **Target Devices** to facilitate the

16  offense of importing cocaine.  The **Target Devices** was likely used to facilitate the offense

17  by transmitting and storing data, specifically that described in Attachment B, which

18  constitutes evidence of violations of Title 46 U.S.C. §§ 70503(a)(1), 70506(b), Conspiracy

19  to Possess with Intent to Distribute Cocaine On Board a Vessel Subject to the Jurisdiction

20  of the United States, and Title 21 U.S.C. §§ 959, 963, Conspiracy to Distribute Controlled

21  Substances for the Purpose of Importation into the United States.  I also believe that

22  probable cause exists to believe that evidence of illegal activity committed by Victor

23  Antonio CARABALI-Gracia, Carlos Rodolfo MERO-Bailon, and Marino Antonio

24  LOPEZ-Pena continues to exist on the **Target Devices** as described in Attachment A.

25  //

26  //

27  //

28  //

11

1       Therefore, I respectfully request that the Court issue this warrant.

2       I swear the foregoing is true and correct to the best of my knowledge and belief.

3

4                       Andres Briseno

5                       Task Force Officer

                       Homeland Securities Investigations

6

7   Subscribed and sworn to before me this 30 day of October 2019.

8

9

Honorable Karen S. Crawford

10  United States Magistrate Judge
      **BARBARA L. MAJOR**

11  **U.S. MAGISTRATE** JUDGE
      **BARBARA L.**

12      **U.S. MAGIST**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28